# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Jonathan D. Benson, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 3:15-cv-47 |
| Innovis Health, LLC, | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

Plaintiff Jonathan D. Benson (Benson) moves to remand this case against his former employer, Innovis Health, LLC (Innovis), to state court, contending this court lacks jurisdiction. Innovis asserts that this court has federal question jurisdiction under the Employee Retirement Income Security Act (ERISA).

In light of a split among court decisions as to whether motions to remand are case-dispositive, and the resulting disagreement over the authority of a magistrate judge to rule on those motions, this opinion is filed as a Report and Recommendation.[1]

## Summary

Benson's employment agreement with Innovis provides for payment of severance benefits. The employment agreement provides that any severance benefits are to be calculated pursuant to the Innovis severance plan in effect at the time of employment termination. Benson challenges which severance plan was in effect when his employment was terminated. Regardless of which severance plan applies, the benefits

---

[1] See, e.g., Schrempp v. Rocky Mountain Holding Co., L.L.C., No. 4:06CV3197, 2007 WL 570406, at *3 n.1 (D. Neb. Feb. 14, 2007) (in light of split of authority, magistrate judge entered report and recommendation); Banbury v. Omnitrition Int'l, Inc., 818 F. Supp. 276, 279 (D. Minn. 1993) (motion to remand to state court is non-case-dispositive and may be referred to magistrate judge under 28 U.S.C. § 636(b)(1)(A)).

will be calculated pursuant to a plan that is governed by ERISA. To avoid complete preemption under ERISA, there must be an alleged breach of a legal duty that arises independent of ERISA. Innovis has established that no qualifying independent legal duty exists, so Benson's claim is subject to complete preemption under ERISA. Removal to this court was proper, and the motion to remand should be denied. Because the motion to remand should be denied, the motion for attorney fees and the request for a hearing on that motion should also be denied. However, in the event the court grants the motion for remand, the motion for attorney fees should nonetheless be denied; there is no suggestion that Innovis acted improperly in removing the case, and the legal questions presented are fairly subject to debate.

## Facts

From December 2010 until July 2014, Innovis employed Benson as Vice President and Executive Director of the Essentia Health-West Region Foundation.[2] In 2014, Innovis eliminated Benson's position and terminated his employment. Innovis advised Benson that he was eligible for severance benefits under its "applicable severance plan." (Doc. #17, p. 2). Benson and Innovis disagree, however, on which of several Innovis severance benefits plans defines Benson's benefits.[3] Benson asserts he is entitled to benefits under a plan providing the equivalent of eighteen months' compensation, while Innovis contends that he is entitled to benefits under a plan that

---

[2] Innovis is a subsidiary of Essentia Health.

[3] Attached to an affidavit of Benson's counsel are three different Innovis severance plans, each of which bears a 2010 date. Benson's counsel identifies one plan as that which Benson believes applies to him, (Doc. #15-4), and the other two as documents he received from counsel for Innovis on two different dates, (Doc. #15, p. 1).

provides a maximum of thirty-six weeks' compensation. (Doc. #16, pp. 2-3).

At the outset of Benson's employment in 2010, he and Innovis entered into a written employment agreement. The agreement provides that, if Innovis terminates Benson's employment without cause, he is entitled to "a continuation of his base salary plus benefits, to such extent and at such levels and for such period of time as is described in the Executive Benefit Plan in effect at the time of termination." (Doc. #15-1, p. 4). The agreement specifies application of North Dakota law and makes no reference to ERISA. Id. at 7.

Innovis submitted an affidavit of its human resource officer, explaining that, in 2013, Essentia (Innovis's parent entity) revised its incentive compensation and severance plans "on an enterprise-wide basis, with the goal of creating consistency across the operation based on the functional duties and responsibilities of the various executives and administrators." (Doc. #17, pp. 1-2). The affidavit states that Essentia then adopted four levels of severance plans and that its executive compensation committee determined that Benson's duties and responsibilities qualified him for the "lowest level severance plan." Id. at 2.

## Procedural Posture

To resolve the dispute over which severance plan applies, Benson initiated a breach of contract claim in state court, and Innovis timely removed it to this court. Although Benson does not dispute that the various Innovis severance plans are ERISA plans,[4] it is his position that his claim is a straightforward breach of contract claim, that

---

[4] Not every employer policy that provides for payment of severance benefits is necessarily governed by ERISA. Emmenegger v. Bull Moose Tube Co., 197 F.3d 929, 934

the parties have agreed is to be decided under North Dakota law. Benson asserts that the dispute does not involve interpretation, application, or enforcement of any ERISA plan, that the dispute can be resolved without referencing the language of any ERISA plan, and that federal question jurisdiction is therefore lacking. In Benson's view, the only question is which of the Innovis severance plans applies; he argues that, once that decision is made, there would be no dispute as to calculation of the severance benefits to which he is entitled.

It is the position of Innovis that, regardless of which plan applies, Benson seeks to recover benefits under a plan regulated by ERISA and that his state law breach of contract claim is therefore completely preempted by ERISA. Innovis argues the determination of which severance plan applies is "inextricably intertwined" with interpreting its severance plans. (Doc. #16, p. 9). In the view of Innovis, the calculation of alleged damages set out in his complaint demonstrates that Benson seeks to recover benefits under an ERISA plan.

**Law and Discussion**

Under 28 U.S.C. § 1441(a), a defendant in a state court civil action may remove that action to a federal court, <u>if</u> it is an action over which the federal court has original jurisdiction. One category of cases over which the federal district courts have original jurisdiction is "federal question" cases—those which arise under federal laws. <u>See</u> 28

---

(8th Cir. 1999). ERISA regulates only those "benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation." <u>Id</u>. (quoting <u>Fort Halifax Packing Co. v. Coyne</u>, 482 U.S. 1, 7 n.5, (1987)). Innovis asserts its severance plans require ongoing administration, and so are governed by ERISA; Benson has not challenged that assertion.

U.S.C. § 1331. This case presents the question of whether Benson's claim is one arising under federal law; if not, the case must be remanded to state court.

The party removing a case to federal court has the burden to demonstrate the basis for federal jurisdiction. Baker v. Martin Marietta Materials, Inc., 745 F.3d 919, 923 (8th Cir. 2014). Because the removal statutes are to be narrowly construed, uncertainties are to be resolved in favor of remand. Schrempp, 2007 WL 570406 at *1 (quoting Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994)). Innovis therefore has the burden to demonstrate federal question jurisdiction under ERISA.

ERISA is a comprehensive federal statute, the purpose of which is to provide uniform regulation of employee benefit plans. "To this end, ERISA includes expansive pre-emption provisions . . . which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004) (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981)). See also Van Natta v. Sara Lee Corp., 439 F. Supp. 2d 911, 924 (N.D. Iowa 2006) ("ERISA is a comprehensive statute drafted to promote the interests of employees and their beneficiaries by regulating the creation and administration of employee benefit plans.").

Generally, courts apply the long-standing "well-pleaded complaint" rule to determine whether a case arises under federal law and so is within federal question jurisdiction. Davila, 542 U.S. at 207. In Davila, the court explained the well-pleaded complaint rule:

> whether a case is one arising under the Constitution or a law . . . , in the sense of the jurisdictional statute[,] . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim . . . , unaided by anything

> alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.

Id. (quoting Taylor v. Anderson, 234 U.S. 74, 75-76 (1914)). There is, however, a well-recognized exception to the well-pleaded complaint rule: the principle of complete preemption. "'[W]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.'" Id. at 207-08 (quoting Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003)). ERISA is one of the federal statutes which may completely preempt state law. Id. at 208. ERISA's preemptive power "'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" Id. at 209 (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65-66 (1987)).

As other courts have observed, the ERISA preemption doctrine is complex and "has oft troubled the courts of appeals and the Supreme Court." Van Natta, 439 F. Supp. 2d at 924. Contributing to the complexity is ERISA's inclusion of two types of preemption: express preemption and complete preemption. The two may co-exist, and it is not necessary to find express preemption in order to find complete preemption. Graham v. Hubbs Mach. & Mfg., Inc., 49 F. Supp. 3d 600, 609 (E.D. Mo. 2014).

ERISA's express preemption is established in 29 U.S.C. § 1144(a), also referred to as § 514(a). Section 1144(a) expressly preempts all state laws insofar as they "relate to any employee benefit plan" covered by ERISA. Express preemption is substantive; that is, it defines federal law as superseding state laws relating to employee benefit plans. "Although express preemption under § 514(a) operates as a defense to a state law cause

6

of action, it does not confer federal jurisdiction or authorize removal." Dakota, Minn. & E.R.R. Corp. v. Schieffer, 857 F. Supp. 2d 886, 890 (D.S.D. 2012).

Complete preemption, on the other hand, arises under 29 U.S.C. § 1132(a)(1)(B), also referred to as § 502(a)(1)(B), which provides that an ERISA plan participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Other courts have observed that complete preemption is really a jurisdictional doctrine rather than a preemption doctrine, in that it "'confers exclusive federal jurisdiction in certain instances where Congress intended the scope of federal law to be so broad as to entirely replace any state-law claim.'" Schieffer, 857 F. Supp. 2d at 890 (quoting Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund, 538 F.3d 594, 596 (7th Cir. 2008)). Innovis asserts complete preemption.

Davila, the most recent Supreme Court case addressing ERISA preemption, described the following test to determine whether a claim is subject to complete preemption under ERISA:

> If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits. A participant or beneficiary can also bring suit generically to "enforce his rights" under the plan, or to clarify any of his rights to future benefits. . . .
>
> It follows that if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B). In other words, <u>if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)</u>, **and** <u>where there is no other independent</u>

7

<u>legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).</u>

542 U.S. at 210 (emphasis added) (citation omitted).

Applying that two part-test in <u>Davila</u>, the Supreme Court considered a Texas statute governing managed care entities, which imposed a duty to exercise ordinary care when making health care decisions. Under the Texas state statute, a managed care entity would not be liable if it denied coverage for any treatment not covered by the health care plan that it was administering. The Court determined that liability under the statute would exist only because of administration of ERISA-regulated benefit plans, so there was no legal duty arising independently of ERISA, and complete preemption applied.

Both prongs of the <u>Davila</u> test must be met to establish complete preemption. In response to Innovis's motion, Benson does not argue that Innovis's severance plans are not governed by ERISA or that his suit could not have been brought under § 502(a)(1)(B). Given Innovis's uncontested position in this litigation (that its severance plans are governed by ERISA), one could not plausibly argue that Benson's claim could not have been initiated under § 502(a)(1)(B). Resolution of this dispute therefore depends on whether there was an absence of any "other independent legal duty" implicated by Innovis's action, so as to satisfy the second prong of <u>Davila</u>.

In <u>Arditi v. Lighthouse International</u>, 676 F.3d 294 (2d Cir. 2012), the plaintiff pled a state law claim for breach of an employment contract. The plaintiff had been employed with Lighthouse International for almost twenty years and had returned to employment there after working elsewhere for two years. When he returned, the parties entered into an employment contract which specified that he would be credited for his

8

prior work for purposes of calculating his future retirement benefits, resulting in an "unreduced pension benefit" if he worked at Lighthouse International another eight years. Id. at 297. Before he retired, the company "froze" its retirement plan, stopping accrual of service time for all members of the plan. After he retired, Arditi claimed that his employment contract entitled him to a pension benefit not reduced by the "freeze." The Second Circuit, applying Davila's two-part conjunctive test, found that his claim was completely preempted by ERISA.

Arditi contended that he was seeking damages not "under" the ERISA plan but for breach of the independent employment contract, using the ERISA plan "merely as a benchmark for damages." Id. at 300. The Second Circuit rejected that position. It found that the plan was "more than a mere benchmark for calculating damages" and was instead the basis for the claimed damages. Id. The employment contract did not establish a separate and independent promise; instead, Arditi's claims were derived directly from the ERISA plan. Id. Both prongs of the Davila test were therefore satisfied, and denial of remand was thus affirmed.

In deciding Arditi, the Second Circuit distinguished it from a case in which it had found no preemption, Stevenson v. Bank of New York Co., Inc., 609 F.3d 56 (2d Cir. 2010). When Stevenson left his employment, the defendant bank had agreed to maintain his pension benefits. The bank later advised Stevenson that his benefit accruals had been frozen when he left the job. The Second Circuit determined that Stevenson was no longer a participant in the bank's ERISA plan, and that whatever rights he had "arose not from the bank's plan, but from the independent agreement that gave him benefits even though he had no right to them under the plan." Arditi, 676 F.2d

9

at 300 (discussing Stevenson, 609 F.3d at 60-61). Since Stevenson was not a plan participant, his claim could not have been brought under § 502(a)(1)(B), and it was therefore not subject to complete preemption under the first prong of Davila.

Since Davila was decided, many district courts have applied its test. In Chesterfield Spine Center, LLC v. Cigna Health & Life Insurance Co., the plaintiff had provided medical services to a patient only after the defendant had confirmed the patient's insurance coverage and authorized the services. No. 4:14CV2047, 2015 WL 4603560, at *1 (E.D. Mo. July 30, 2015). After the defendant paid only a portion of the cost of the patient's medical care, the plaintiff brought an ERISA claim as well as state law claims for negligent misrepresentation, equitable estoppel, and promissory estoppel. The plaintiff asserted an "independent legal duty" that defendant be truthful in its dealings with plaintiff. Id. at *6. The court found no independent legal duty, holding that the plaintiff's state law theories were derived from the rights and obligations established by the benefit plan and that both prongs of the Davila test were therefore satisfied. Id.

In Graham v. Hubbs Machine & Manufacturing, Inc., the plaintiff alleged wrongful termination and interference with a business expectancy under state law. 49 F. Supp. 3d at 604. Graham's wrongful termination claim included an allegation that she was terminated in retaliation for reporting ERISA violations. The court found Graham's state law claims subject to both express preemption and complete preemption under ERISA. The court reasoned that an alleged violation of an ERISA plan was a substantive element of the plaintiff's retaliation claim, that Graham was thus seeking to enforce a right arising under ERISA, and that the second element of Davila was therefore established. Id. at 610-11.

Schieffer involved a claim for severance benefits, but the court concluded that no ERISA plan governed; rather, Schieffer's right to severance benefits arose solely from his individual employment contract and not from any benefit plan established by his employer. 857 F. Supp. 2d at 889, 894-95. Since no employer severance plan was involved there, Schieffer is distinguished from Benson's claim.

In Noel v. Laclede Gas Co., the plaintiff alleged the employer had not properly advised a former employee of the right to convert life insurance coverage to an individual policy upon termination of employment. 612 F. Supp. 2d 1051, 1054 (E.D. Mo. 2009). The plaintiff alleged an independent legal duty arising from a state statute requiring notice of the right to convert from a group policy to an individual policy. The court found that the state statute's notice requirement did not arise independently of the ERISA-regulated life insurance benefit plan; hence, the second prong of the Davila test was satisfied, and the claims were completely preempted. Id. at 1059.

In Van Natta, the plaintiffs alleged wrongful denial of spousal benefits under an employee health benefit plan and asserted claims for bad faith breach of contract under state law. 439 F. Supp. 2d at 917. Applying the Davila test, the court found that the plaintiffs "primarily complain[ed] about denials of coverage promised under the terms of an ERISA-regulated employee benefit plan." Id. at 934-35. The court noted that the plaintiffs did not pursue their remedy under ERISA but under state law, which the court stated "are precisely the kinds of claims that the Davila Court held to be preempted under § 502(a)." Id. at 935.

St. John's Mercy Health System v. Healthlink, Inc. involved a claim that the plaintiff hospital had provided services to a patient based on the defendant's

representations that the patient had health insurance coverage. No. 4:08CV999, 2008 WL 4204721, at *1 (E.D. Mo. Sept. 9, 2008). The court found <u>neither</u> element of the <u>Davila</u> test established; the plaintiff was not a plan beneficiary seeking to recover benefits under an ERISA plan, and any misrepresentations were not made in the defendant's capacity as plan fiduciary or administrator.

In <u>Grof-Tisza v. Housing Authority of the City of Bridgeport</u>, the plaintiff alleged wrongful termination after she signed an agreement with a labor union. No. 3:11cv149, 2011 WL 1775992, at *1 (D. Conn. May 10, 2011). She alleged that she had earlier declined a buy-out plan based on a promise of continued eligibility for retirement benefits, and that by terminating her employment rather than allowing her to retire, her employer denied her the benefits it had promised. <u>Id.</u> Citing <u>Davila</u>, the court found that the plaintiff's rights under an ERISA plan would be implicated only if she prevailed on her state law claims of employment discrimination and negligent misrepresentation. <u>Id.</u> The case was remanded based on a determination that it was not preempted by ERISA, since <u>Davila's</u> first prong was not satisfied.

Benson cites <u>Workforce Development, Inc. v. Corporate Benefit Services of America, Inc.</u>, a case decided shortly before <u>Davila</u>. 316 F. Supp. 2d 854 (D. Minn. 2004). An employer that had a self-funded ERISA plan brought a claim against the company with which the employer contracted to service the plan. The court found no duty arising under ERISA and therefore concluded that the case had been improperly removed to federal court. Had <u>Davila</u> applied, it appears that the first prong of its test would not have been established. Benson's claim is distinguishable; because he has not asserted that he could not have brought a claim under § 502(a)(1)(B), he does not

12

contest that Innovis has satisfied the first prong of Davila.

Another case Benson cites, McNeal v. Frontier AG, Inc., was removed to federal court based on an assertion of express preemption. No. 12-1284, 2013 WL 74350, at *1, 3 (D. Kan. Jan. 7, 2013). The case addressed a dispute between an employer and an employee about an agreement to provide disability insurance coverage. Ruling on a motion to dismiss and for partial summary judgment, the court determined that the defendant had not established that the state law claims were sufficiently "relate[d] to" an ERISA plan so as to subject the claims to express preemption. Id. at *3. Since McNeal addressed express preemption rather than complete preemption, it is easily distinguished from Benson's claim.

Review of these post-Davila cases decided by other district courts shows that, if the first prong of Davila is satisfied, the second prong is likely also satisfied. In other words, it is difficult to avoid complete preemption if the claim is one that could have been brought under § 502(a)(1)(B).

Innovis argues that its duties under Benson's employment agreement are not independent of its severance plans and that it has therefore met the second prong of the Davila test. (Doc. #16, p. 7). Benson alleges a breach of a contract duty in failing to pay severance benefits, but calculation of those benefits is dependent on terms of a plan governed by ERISA. Because of the relationship between the employment agreement and the Innovis severance plans, any breach of the duty to pay severance benefits is not independent of an ERISA plan. Innovis has therefore satisfied the second prong of the Davila test, and complete preemption applies. The court therefore has federal question jurisdiction, and remand should be denied.

**Request for Attorney Fees and for a Hearing**

Benson seeks attorney fees under 28 U.S.C. § 1447(c), which allows an award of fees when a case is remanded to state court. In light of the recommendations made herein, that motion, (Doc. #5), and the request for a hearing on that motion, (Doc. #18), should be denied.

In the event the motion for remand is granted, the motion for attorney fees should nonetheless be denied. When remand to the state court is granted, an award of fees is discretionary. Here, there is no suggestion that Innovis acted improperly in removing the case, and the legal questions presented are fairly subject to debate. See Workforce Dev., Inc., 316 F. Supp. 2d at 859.

**Conclusion**

Under Davila, Benson's claim is subject to complete preemption. This court therefore has federal question jurisdiction, and the motion to remand, (Doc. #5), should be denied on that basis. Based on that recommendation, the motion for attorney fees, (Doc. #5), and for a hearing on that motion, (Doc. #18), should also be denied. Should the court grant the motion for remand, the motion for attorney fees should nevertheless be denied because nothing suggests Innovis acted improperly in removing the case and because the legal questions presented are fairly subject to debate.

Dated this 26th day of October, 2015.

> */s/ Alice R. Senechal*
> Alice R. Senechal
> United States Magistrate Judge

## NOTICE OF RIGHT TO OBJECT

Pursuant to Federal Rule of Civil Procedure 72(a) and (b) and District of North Dakota Civil Local Rule 72.1(D)(2) and (3), any party may object to this Report and Recommendation by filing with the Clerk of Court no later than **November 9, 2015**, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may result in forfeiture of the right to seek review in the Court of Appeals.